## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| YVEYA TAYLOR, on behalf of | : : | |
| D.M.G., a minor | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civ. A. No. 12-1382-RGA/MPT |
| | : | |
| CAROLYN COLVIN, | : | |
| ACTING COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant, | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

On November 2, 2012, plaintiff, Yveya Taylor ("plaintiff"), filed this action on

behalf of D.M.G., a minor, against defendant Carolyn W. Colvin, Acting Commissioner

of Social Security ("defendant").[1]  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §

405(g), of a decision by defendant denying her application for disability insurance

benefits ("DIB") under Title II of the Social Security Act.

Presently before the court are the parties' cross-motions for summary judgment,

in which plaintiff seeks to either reverse the Commissioner's decision and remand solely

for the calculation of benefits, or remand for additional proceedings.  Defendant asks

---

[1] Carolyn W. Colvin became the Commissioner of Social Security on February 13, 2013 after this proceeding was initially filed. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure ("FED. R. CIV. P."), Carolyn W. Colvin replaced the previous Commissioner, Michael J. Astrue, as the defendant in this case.  Plaintiff is the mother of minor plaintiff.

the court to affirm the decision and to enter judgment in her favor.  For the reasons set forth below, the court recommends plaintiff's motion for summary judgement be granted in part, defendant's motion for summary judgement be denied, and this case be remanded for additional proceedings.

## II.     BACKGROUND

### A.     Procedural History

On September 8, 2009, plaintiff applied for supplemental security income on behalf of the minor plaintiff, claiming an alleged disability of asthma with an onset date of October 28, 2000.[2]  Her claim was initially denied on January 22, 2010, and upon reconsideration on April 21, 2010.  Plaintiff subsequently filed a written request for a hearing on June 24, 2010.  On March 30, 2011, a video hearing was conducted before Administrative Law Judge ("ALJ") Barbara Powell.[3]  Both minor plaintiff and plaintiff, represented by counsel, appeared and testified, and ALJ Powell presided over the hearing.

On April 26, 2011, the ALJ denied plaintiff's claims, finding minor plaintiff was not considered disabled under section 1614(a)(3)(C) of the Social Security Act.[4]  After considering the record, the ALJ determined minor plaintiff has impairments that are severe within the meaning of the regulations, but does not have an impairment or combination of impairments severe enough to meet or medically equal one listed in

---

[2] Plaintiff also claimed her child suffers other severe impairments of amblyopia, obesity, and ADHD (attention deficit hyperactivity disorder), but did not invoke these impairments on appeal.
[3] D.I. 15 at 14.
[4] *Id.*

either 20 CFR 404. 103.00 (respiratory) or 404. 102.00 (special senses).[5]

Plaintiff filed a request for review of that decision, which was denied by the Appeals Council on September 6, 2012.[6]   Consequently, the April 26, 2011 decision by the ALJ is the final decision of the Commissioner.   Seeking judicial review of this decision, plaintiff moved for summary judgment in the District Court of Delaware on March 18, 2013.[7]   Defendant filed a cross-motion for summary judgment.[8]

**B.    Medical Record History**

Minor plaintiff was born on October 28, 2000.[9]   Her mother and treating physicians claim she has suffered from asthma from at least the age of one.[10]   Ilene Bourdreaux, M.D., is minor plaintiff's primary physician, and the record demonstrates Dr. Bourdreaux prescribed medication for the treatment of asthma, such as an Albuterol nebulizer, Singulair, and oral steroids, from December 2004 to September 2010.[11]   On average, minor plaintiff sees Dr. Bourdreaux about twice a year.[12]

Minor plaintiff was hospitalized for acute asthma exacerbation in October 2007, where she was treated with oral steroids and Abuterol.[13]   In February 2008, she returned to the hospital, where she was diagnosed with pneumonia and asthma exacerbation and prescribed Albuterol.[14]   She returned to the emergency room again in

---

[5] *Id.* at 18.
[6] *Id.* at 1.
[7] D.I. 17 at 1.
[8] D.I. 21 at 1.
[9] D.I. 15 at 251.
[10] *Id.* at 51, 251, 317-19.
[11] *Id.*
[12] *Id.* at 366-79.
[13] *Id.* at 365.
[14] *Id.* at 361-62.

March and April 2008 for acute asthma exacerbation, and received Albuterol and oral steroids.[15]   In November 2008, minor plaintiff was hospitalized for six days due to her asthma, during which she was prescribed a course of oral steroids, educated on controlling her asthma, and discharged on Albuterol, Singulair, and Prednisone.[16]

In January 2009, minor plaintiff began treating with Dr. Aaron S. Chidekel, Chief of Pediatric Pulmonology at the Nemours Children's Hospital.[17]   Dr. Chidekel's initial impression of her condition was mild persistent asthma.[18]   His initial examination delved into minor plaintiff's home and social life, which indicated that she lived with two dogs, her parents were smokers, and, despite a shortness of breath and wheezing, she was able to keep up with other members of her karate class.[19]   Dr. Chidekel performed spirometry which revealed normal air flow and volume, but did not test her response to bronchodilators.[20]   Dr. Chidekel revised minor plaintiff's asthma treatment by prescribing Prednisone in addition to the nebulizer treatments that she was previously using.[21]   Dr. Chidekel saw her again in March 2009, and reported her respiratory status as "fairly well," and her moderate persistent asthma under good control.[22]   He did not perform spirometry at that time.[23]   She did not see Dr. Chidekel again until March 2010.[24]

Minor plaintiff continued to do reasonably well, though Dr. Boudreaux increased

---

[15] *Id.* at 350-51, 356-57.
[16] *Id.* at 329.
[17] *Id.* at 316-20, 465.
[18] *Id.* at 319.
[19] *Id.* at 317.
[20] *Id.* at 323.
[21] *Id.* at 319.
[22] *Id.* at 307-08.
[23] *Id.* at 308.
[24] *Id.* at 19-20, 295.

her Prednisone in October 2009.[25]  In December 2009, minor plaintiff sought emergency room treatment for asthma exacerbation and was discharged with prescriptions for Prednisone and an Albuterol nebulizer.[26]  In a February 2010 examination, Dr. Boudreaux noted minor plaintiff was using her nebulizer almost every day, prescribed Prednisone, and advised her to see Dr. Chidekel.[27]

Dr. Chidekel saw minor plaintiff in March 2010 and noted the following complaints:  she was not doing well, had experienced ten unplanned emergency room or physician visits since their last meeting, and wheezed frequently, along with other symptoms.[28]  Dr. Chidekel performed spirometry, which revealed normal lung function and severe obstructive pulmonary changes reversible with bronchodilators.[29]  Dr. Chidekel further reported minor plaintiff as healthy, alert, and without any wheezing at the time of his examination, however his impression was her asthma had worsened to severe and persistent, and was under poor control.[30]  He prescribed a course of Prednisone.[31]

Dr. Chidekel examined minor plaintiff four months later, on July 26, 2010, and diagnosed asthma with exacerbation.[32]  Although his notes indicated he lasted examined her in May 2010, there is no evidence of that visit in the record.[33]  His

---

[25] *Id.* at 369.
[26] *Id.* at 298.
[27] *Id.* at 295.
[28] *Id.* at 295-96.  Her ten unplanned emergency room/doctors' visits are not documented in the record.
[29] *Id.*
[30] *Id.* at 19.
[31] *Id.* at 296.
[32] *Id.* at 397.
[33] *Id.* at 396.

impression was severe persistent asthma under poor control during the previous week despite an aggressive sick plan and five days of oral steroids at inadequate dosing.[34] He further noted audible wheezing, but did not perform spirometry.[35]  Dr. Chidekel prescribed Singulair, Advair, Prednisone, and an Albuterol nebulizer.[36]

Minor plaintiff followed up with Dr. Chidekel in September 2010.  At that time, his diagnosis was "mild persistent asthma," however his finding, both prior to and following this examination, was severe and persistent asthma.[37]  During this examination, Dr. Chidekel observed wheezing, did not perform spirometry,[38] and continued the same medication protocol.[39]

Minor plaintiff visited Dr. Chidekel a month later in October 2010.[40]  His diagnosis was severe, persistent asthma.[41]  During this examination, no wheezing was noted.[42] Dr. Chidekel performed spirometry, which revealed moderate obstructive pulmonary changes reversible with bronchodilators.  His impression was severe persistent asthma under fair control.[43]  A week following this appointment, minor plaintiff was treated at the emergency room for asthma with acute exacerbation.[44]  The emergency room records noted her medications of Advair, Singulair, and Albuterol,[45] and documented the

---

[34] *Id.* at 397.
[35] *Id.*
[36] *Id.*
[37] *Id.* at 401-03.
[38] *Id.* at 403.
[39] *Id.* at 404.
[40] *Id.* at 407.
[41] *Id.* at 406.
[42] *Id.* at 407.
[43] *Id.*
[44] *Id.* at 416.
[45] *Id.*

presence of wheezing.[46]   During a follow-up visit three days later, Dr. Chidekel observed

wheezing, and instructed her to use the nebulizer more frequently and continue taking

Advair and Prednisone as previously prescribed.[47]

Minor plaintiff returned again in November 2010 to Nemours Hospital for a

tonsillitis examination and was not seen by Dr. Chidekel.[48]   Minor plaintiff had a

tonsillectomy in December 2010.[49]   Her last medical record in regard to her asthma was

from October 2010.

### C.   Medical Opinions

#### 1.   Opinion of Aaron S. Chidekel, M.D.

Dr. Chidekel provided his medical opinion of minor plaintiff on two separate

occasions.  In September 2010, Dr. Chidekel completed a child function questionnaire,

in which he noted:  a diagnosis of asthma (493.9), for which she was taking Albuteral,

Singulair, Prednisone, Claritin, and Advair; she suffered from frequent wheezing and

exercise intolerance; she had five instances of hospitalization (each cited instance

occurred before she was his patient); she suffered frequent attacks despite prescribed

treatment during 2008; and she presently continued to have frequent flares.[50]   The child

function questionnaire contains sections asking if a minor claimant meets the

requirements of the asthma listing under section 103.03(C) (the "asthma listing"), which

---

[46] *Id.*
[47] *Id.* at 422.
[48] *Id.* at 425
[49] *Id.* at 430.
[50] *Id.* at  388-390.

is determinative of disability.[51]  Dr. Chidekel responded "yes" to the inquiry of "an

absence of extended symptom-free periods requiring daytime and nocturnal use of

sympathominmetic bronchodilators," and cited two occasions in the section regarding

"persistent prolonged expiration with radiographic or other appropriate imaging

techniques evidence of pulmonary hyperinflation."  Such responses could indicate that

minor plaintiff met the criteria for the asthma listing.

Approximately five months later, in March 2011, Dr. Chidekel wrote a letter on

behalf of minor plaintiff, opining she met the criteria for Social Security Listing 103.03

(C)(2) for asthma.[52]  Specifically, Dr. Chidekel noted:  minor plaintiff has severe and

persistent asthma as evidenced by chronic asthma symptoms despite the use of

multiple controller medications; she has persistently abnormal pulmonary function

testing measured on several occasions; and she has recurrent exacerbations requiring

oral steroid therapy.[53]  Although his letter does not address "radiographic and other

imaging techniques evidencing pulmonary hyperinflation," Dr. Chidekel maintained

minor plaintiff met the requirements of listing 103.03 (C)(2), by her use of

corticosteroids averaging more than 5 days per month for at least 3 months over a 12-

_____

[51] Listing 103.03(C) for asthma requires: persistent low-grade wheezing between
acute attacks or absence of extended symptom-free periods requiring daytime and
nocturnal use of sympathomimetic bronchodilators with one of the following: (1)
persistent prolonged expiration with radiographic or other appropriate imaging
techniques evidence of pulmonary hyperinflation or peribronchial disease; or (2) short
courses of corticosteroids that average more than 5 days per month for at least 3
months during a 12-month period.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.03(C)
[52] D.I. 15 at 465.
[53] *Id.*

8

month period.[54]

### 2. Opinion of Anne Aldridge, M.D.

On January 22, 2010, Dr. Anne Aldridge examined minor plaintiff's medical records for an initial determination of childhood disability following plaintiff's request for reconsideration.[55]  Dr. Aldridge determined minor plaintiff had a "less than marked" limitation on her health and physical well-being, noting the medical records documented a single emergency room intervention for asthma exacerbation between January 2008 and January 2009, and found her asthma under good control.[56]  Dr. Aldridge concluded minor plaintiff's impairment or combination of impairments is severe, but did not meet, medically equal, or functionally equal the asthma listings.[57]

### 3. Opinion of Jose Acuna, M.D.

On April 21, 2010, Dr. Jose Acuna filed his review of minor plaintiff's medical record in regard to her subsequent request for disability reconsideration, and agreed with the denial for SSI disability.[58]  Dr. Acuna noted:  minor plaintiff's mother claims in a questionnaire as to the degree and extent of minor plaintiff's daily inhaler use were not corroborated by the medical record; Dr. Chidekel reported in March 2009 that minor plaintiff was doing fairly well, with no wheezing, and only single use of her inhaler since

---

[54] *Id.*  Specifically, Dr. Chidekel noted minor plaintiff wheezed frequently, used the inhaler several times daily, was prescribed oral steroids often over the past year, including Prednisone, Advair and Singulair, had twenty absences from school due to asthma and had over ten visits to either the emergency room and her physicians since his March 2009 examination.  *Id.*

[55] *Id.* at 290.

[56] *Id.* at 292.

[57] *Id.* at 290.

[58] *Id.* at 383.

her visit in January 2009; minor plaintiff was prescribed a nebulizer in October 2009; she had seven excused absences during the 2009 school year; and she used her inhaler thirteen times in school from September 2009 to the following January.[59]

Although Dr. Acuna acknowledged that minor plaintiff claimed her condition worsened since her previous disability report, he determined the medical record did not corroborate a significant degree of worsening.[60] He further recognized Dr. Chidekel's March 2010 examination, but concluded those findings were not corroborated by the medical record.[61] Based on the current record, Dr. Acuna concurred with Dr. Aldridge's findings from January 22, 2010.[62]

### D.    The ALJ's Findings

Social Security regulations provide an individual under the age of 18 will be considered disabled if she had a medically determinable physical or mental impairment that results in marked and severe functional limitations, which has lasted or can be expected to last for a continuous period of not less than 12 months.[63] A three-step sequential evaluation process is used to determine if an individual under the age of 18 is disabled:  (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe"; and (3) whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of

---

[59] *Id.* at 386.
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] 42 U.S.C. 1382c(a)(3)(C).

a listing, or that functionally equals the listings.[64]

Based on the evidence, the ALJ determined in her April 27, 2011 opinion that minor plaintiff was not disabled under the Social Security Act since the date of filing, and therefore, not entitled to benefits.[65]   The ALJ's found the following:

1.    The claimant was born on October 28, 2000.  Therefore, she was a school-age child on September 8, 2009, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2.    The claimant has not engaged in substantial gainful activity since September 8, 2009, the application date (20 CFR 416.924(b) and 416.971).

3.    The claimant has the following severe impairments:  asthma, amblyopia, and obesity (20 CFR 416.924(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925, and 416.926).

5.    The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.92a).

6.    The claimant has not been disabled, as defined in the Social Security Act, since September 8, 2009, the date the application was filed (20 CFR 416.924(a)).

---

[64] 20 C.F.R. § 416.924(a).
[65] *Id.* at 14.

In her analysis, the ALJ gave little weight to Dr. Chidekel's medical opinion.[66]  The

weight the ALJ attributed to minor plaintiff's treating physician is at issue on this appeal.

## III.    JURISDICTION

A district court's jurisdiction to review an ALJ's decision regarding disability

benefits is controlled by 42 U.S.C. S 405(g).  The statute provides that "[a]ny individual,

after any final decision of the Commissioner of Social Security made after a hearing to

which he was a party . . . may obtain review of such decision by a civil action."[67]  The

Commissioner's decision becomes final when the Appeals Counsel affirms an ALJ

opinion, denies review of an ALJ decision, or when a claimant fails to pursue available

administrative remedies.[68]  In the instant matter, the Commissioner's decision became

final when the Appeals Counsel affirmed the ALJ's denial of benefits.  Thus, this court

has jurisdiction to review the ALJ's decision.

## IV.    STANDARD OF REVIEW

This court's review is limited to determining whether the final decision of the

Commissioner is supported by substantial evidence.[69]  If the decision is supported by

substantial evidence, then the court is bound by the factual findings therein.[70]

> Substantial evidence is less than preponderance but more than a mere
> scintilla.  It is such relevant evidence as a reasonable mind would accept
> as adequate support for conclusion.  It must do more than create a

---

[66] D.I. 15 at 20.

[67] 42 U.S.C. § 405(g) (2002).

[68] *Aversa v. Secretary of Health & Human Services*, 672 F. Supp. 775, 777 (D.N.J. 1987); *see also* 20 C.F.R. S 404.905 (2002).

[69] *Jesurum v. Sec'y of the United States Department of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)); *see also* 42 U.S.C. S 405(g).

[70] *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

suspicion of the existence of a fact to be established . . . it must be enough to justify, if the trial were put to a jury, a refusal to direct a verdict when the conclusion sought to drawn from it is one of fact to the jury.[71]

"Overall this test is deferential, and we grant similar deference to agency inferences from facts if those inferences are supported by substantial evidence, even where this court acting de novo might have reached a different result."[72]  Furthermore, "the evidence must be sufficient to support the conclusion of a reasonable person after considering the evidentiary record as a whole, not just the evidence that is consistent with the agency's finding."[73]

Thus, "a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence."[74]  "Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion."[75]  Despite the deference given to administrative decisions in disability benefit cases, "appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence."[76]

The Supreme Court has embraced a similar standard for determining summary judgment pursuant to FED. R. CIV. P. 56.[77]  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between parties will not defeat an

---

[71] *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).
[72] *Monsour Med. Ct. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986)
[73] *Id.*
[74] *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000).
[75] *Id.*
[76] *Smith v. Califano*, 926 F.2d 968, 970 (3d Cir. 1981)
[77] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986).

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[78]  Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an [essential element] . . . on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of [that] . . . party's case necessarily renders all other facts immaterial."[79]

The party moving for summary judgment bears the burden of demonstrating there is no genuine issue of material fact,[80] by showing the court "that there is an absence of evidence to support the nonmoving party's case."[81]  On the other hand, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."[82]  When reviewing a motion for summary judgment, a court must evaluate the facts in a light most favorable to the nonmoving party drawing all reasonable inferences in that party's favor.[83]  The court should grant the motion "unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party."[84]

Cross-motions for summary judgment are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently

---

[78] *Id.* at 247-48.
[79] *Celeotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).
[80] *Id.* at 323.
[81] *Id.* at 325.
[82] *Krups v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).
[83] *Anderson* 477 U.S. at 255.
[84] *Id.* at 251.

contradictory claims does not constitute an agreement, that if one is rejected the other is necessarily justified, or that the losing party waives judicial consideration and a determination whether genuine issues of material fact exist.[85]  Moreover, "[t]he filing of the cross-motions for summary judgment does not require the court to grant summary judgment for either party."[86]

## V.   DISCUSSION

Plaintiff argues the ALJ improperly gave little weight to the opinion of minor plaintiff's treating physician, Dr. Chidekel, which demonstrates her impairment meets the SSI asthma listing 103.03(C)(2), and failed to sufficiently explain why minor plaintiff did not meet the listing.[87]  Plaintiff also contends minor plaintiff met the requirements of the asthma listing, as exhibited by the evidence, absent the opinion of Dr. Chidekel.[88] This court is not permitted to undertake a de novo review, but rather is limited to determining whether the final decision is supported by substantial evidence.  The ALJ's decision is supported by substantial evidence, as long as the ALJ properly weighed Dr. Chidekel's opinion.  The ALJ failed to sufficiently explain her reasoning.  That failure suggests the ALJ did not properly consider the medical evidence when weighing Dr. Chidekel's opinion, and therefore it is recommended this matter be remanded for proper consideration.

The Third Circuit follows the "treating physician doctrine,"[89] which requires an

---

[85] *Rains v. Cascae Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[86] *Krups v. New Castle County*, 732 F.Supp. 497, 505 (D. Del. 1990).
[87] D.I. 18 at 8.
[88] *Id.*
[89] *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 659 (D. Del. 2008); *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).

ALJ give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all.[90]  When a physician has treated a patient over an extended period of time, that physician's opinion should typically be afforded great weight.[91]  A treating physician's opinion is afforded "'controlling weight,'" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence [in the claimant's] case record.'"[92]  A final disability determination must not conflict with an opinion deserving controlling weight.[93]  An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence."[94]  That opinion may not be rejected without reason or for the wrong reason.[95]

When there is contradictory medical evidence, the ALJ must carefully evaluate how much weight to give the treating physician's opinion and provide an explanation as to why the opinion is not given controlling weight.[96]  Thus, even when the treating source's opinion is not given controlling weight, it does not follow that it deserves no weight; the ALJ must apply several factors in deciding how much weight to assign it.[97]  These factors include:  (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the

---

[90] *See Mason*, 994 F.2d at 1067.
[91] *See Dass v. Barnhart*, 386 F .Supp. 2d 568, 576 (D. Del.2005).
[92] *Fargnoli v. Massanari*, 247 F.2d 34, 43 (2d Cir. 2001) (quoting 20 C.F.R. § 303.1527 (d)(2)).
[93] *Mayo v. Astrue*, C.A. No. 10-792-RGA, 2012 WL 3185418 at *8 (D. Del. Aug. 3, 2012).
[94] *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000).
[95] *See id.* at 317.
[96] *See Gonzalez*, 537 F. Supp. 2d at 660.
[97] *See id.*

treatment provided and the kind of examination or testing performed, (3) the degree to which the opinion is supported by relevant evidence, (4) the consistency of the opinion with the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors which tend to support or contradict the opinion.[98]  If an ALJ fails to conduct this analysis, a reviewing court cannot judge whether the ALJ actually considered all the relevant evidence, and the ALJ's decision cannot stand.[99]

Social Security Regulations require the ALJ give specific reasons supported by evidence in the case record for the weight given to the treating source's medical opinion when making an unfavorable determination.[100]  The ALJ is not required to supply a comprehensive explanation for the rejection of evidence, nor to use any particular language or adhere to a specific format.[101]  The explanation, however, must be sufficiently specific to make clear to any subsequent reviewers, the weight the

---

[98] 20 CFR 416.927(c) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-5p; SSR 96-2p; *see also Gonzalez*, 537 F. Supp. 2d at 660.

[99] *Griffies v. Astrue*, 855 F. Supp. 2d. 257, 271 (*citing Gonzales*, 537 F. Supp. 2d at 660 ("[If the adjudicator fails to give good reasons in the notice of the determination], a reviewing court cannot determine whether 'significant probative evidence was not credited or if it was simply ignored.' . . .  If a reviewing court is denied the opportunity to make such a determination, 'the claim must be remanded or reversed and all evidence must be addressed.'")).

[100] SSR 96-2P; *See Fargnoli*, 247 F.3d. at 42.

[101] *See Cotter v. Harris*, 650 F.2d 481, 481 (3d Cir. 1981) ("In most cases, a sentence or short paragraph would probably suffice."); *see also Jones*, 364 F.3d at 505. *Cf. Eskridge v. Astrue,* 569 F. Supp. 2d 424, 437 (D. Del. 2008) (citing *Cotter*, but remanding the ALJ's decision because it was "unclear" to the court whether the ALJ considered a treating physician's opinion, in the absence of the reasons why the opinion was or was not adopted, the weight it was afforded, or how the factors set forth in 20 C.F.R. 404.1527(d) applied).

adjudicator gave to the treating source's medical opinion and the reasoning.[102]

Conclusory statements devoid of any references to the factual record provide no

opportunity for meaningful judicial review and are not acceptable.[103]  "The ALJ cannot

reject a treating physician's opinion solely by stating that the opinion is 'contradicted' by

the 'objective evidence of record' without specifying what the 'objective evidence of

record' is.  The ALJ must further specify why the objective evidence is contradicting

(unless it is obvious simply from stating it)."[104]

Here, the ALJ's determination of weight is conclusory on its face and merely

refers to the preceding paragraphs:  "[t]his opinion is given little weight because it is

inconsistent with the doctor's treatment records, discussed above.  Further, the requisite

frequency of emergency interventions is not documented by the doctor."[105]  In the

preceding paragraphs, the ALJ acknowledges Dr. Chidekel's medical conclusions of

March 2010, where, after examining minor plaintiff for the first time since March 2009,

he reported her complaints of not doing well, wheezing frequently, and ten unplanned

visits to the emergency room or doctors' offices, among other symptoms.[106]  The ALJ

states that, contrary to these complaints, spirometry revealed normal lung function and

severe obstructive pulmonary changes reversible with bronchodilators.[107]  The mention

of "normal lung function" may suggest a contradiction, but "obstructive pulmonary

---

[102] *Jones*, 364 F.3d at 505.
[103] *Griffes v. Astrue*, 855 F. Supp. 2d 257 (D. Del. 2012) (citing *Burnett v. Comm'r*, 220 F.3d 112, 119-20 (3d Cir. 2000).
[104] *Mayo*, 2012 WL 3185418, *8 fn.6.
[105] D.I. 15 at 20 ("This opinion is given little weight because it is inconsistent with the doctor's treatment records, discussed above.").
[106] *See id.* at 19, 295-96.
[107] *Id.*

18

changes reversible with bronchodilators" is one of the criteria for the SSI asthma listing.[108]  Dr. Chidekel further reported minor plaintiff as healthy, alert, and without any wheezing at the time of his examination; his impression, however, remained as severe persistent asthma under poor control.[109]  The ALJ failed to address Dr. Chidekel's last impression.

The ALJ mentioned Dr. Chidekel routinely examined the plaintiff approximately every 2 months in 2010.[110]  The ALJ discussed an examination in September 2010 which indicated a diagnosis of mild persistent asthma with no emergency room visits for acute asthma since her last evaluation.[111]  Although the diagnosis contained in the September 2010 record was "mild persistent asthma," Dr. Chidekel's progress notes indicate a diagnosis of severe and persistent asthma, both prior to and after this date.[112] The ALJ failed to address a previous examination in late July 2010, where Dr. Chidekel reported his impression of "severe persistent asthma under poor control for past week despite aggressive sick plan and 5 days of oral steroids at inadequate dosing."[113]  The ALJ also referred to Dr. Chidekel's October 2010 finding that minor plaintiff has intermittent asthma, with spirometry revealing mild to moderate reversible airflow obstruction.[114]  The ALJ, however, failed to discuss Dr. Chidekel's conclusion at that

---

[108] *See* 20 CFR 404. 103.03(C) (listing "absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators" as a criteria for finding).
[109] D.I. 15 at 19.
[110] *Id.*
[111] *Id.*
[112] *See id.* at 401-03.
[113] *See id.* at 397.
[114] *Id.* at 19-20.

time of "severe persistent asthma under fair control,"[115] and never recognized the

diagnostic change from mild to severe persistent asthma during that same period.[116]

Following her brief review of the above record wherein the ALJ reiterates Dr.

Chidekel's diagnoses of "mild or intermittent" asthma, the ALJ points to the doctor's

March 2011 letter, which stated minor plaintiff has severe and pervasive asthma,[117]

suggesting a contradiction.  However, upon further review, it is clear that he came to the

same diagnosis during his previous examinations of minor plaintiff.  This purported

contradiction appears to be a significant basis on which the ALJ relies in determining

the weight attributed to Dr. Chidekel's opinion, which as demonstrated by a complete

review of the record, is not inconsistent findings.  The ALJ also briefly noted a one-year

treatment gap between March 2009 and March 2010.[118]

Plaintiff complains the ALJ selectively chose evidence to support her

determination of weight, while disregarding other evidence that contradicted her

findings, noting the ALJ used the incorrect date when referring to Dr. Chidekel's child

function questionnaire.  The ALJ noted Dr. Chidekel as completing the questionnaire,

which indicates minor plaintiff met the criteria for the asthma listing, in September

---

[115] *Id.* at 406.

[116] *Id.* at 405.

[117] *Id.* at 20.

[118] *Id.* at 19-20 ("[Minor plaintiff] was seen in the emergency room and put on oral steroids in December 2009 . . . .  Her mother reported that the claimant had 10 unplanned visits to the emergency room or doctor's office, mostly to the PMD, rather than the emergency room.  There is no documentation of this frequency in the record. Further, the claimant had no hospitalizations since the last visit.")

2009,[119] when he actually prepared the questionnaire in September 2010.[120]  Further,

Dr. Chidekel's medical records from July 2010 to October 2010 corroborate his findings

in the questionnaire, as both report symptoms of severe and persistent asthma and the

treatment prescribed in response.[121]  Since the ALJ mistakenly understood the child

function questionnaire was completed in September 2009, that error could have

affected the weight she attributed to Dr. Chidekel's opinion because there would be no

contemporaneous medical records to support his conclusions.

A final disability determination must not conflict with an opinion deserving of

controlling weight.[122]  Dr. Chidekel, as minor plaintiff's treating physician, opined she

suffered symptoms consistent with the criteria for the SSI Listing for asthma.  His

treatment record suggests persistent low-grade wheezing between acute attacks, or the

absence of symptom-free periods requiring regular use of sympathomimetic

bronchodilators, short courses of corticosteroids that averaged more than 5 days per

month for at least 3 months during a 12-month period, and imaging techniques and

testing evidencing pulmonary hyperinflation.[123]  Dr. Chidekel concluded minor plaintiff

satisfied the individual asthma requirements.  If Dr. Chidekel's opinion was accorded

controlling weight, it would explicitly conflict with the ALJ's disability determination.

Under 42 U.S.C. § 405(g), where disability is clearly established and where

---

[119] The ALJ states that Dr. Chidekel's citations in support of his findings in the questionnaire, specifically the previous hospitalizations, refer to the time period before minor plaintiff came under his treatment and care.  *See id.* at 20, 389.
[120] *Id.* at 388-390.
[121] *See supra* notes 32-40 and accompanying text.
[122] *See*, *Simmonds v. Astrue*, 872 F. Supp. 2d 351, 358 (D. Del. 2012); *see also Griffies v. Astrue*, 855 F. Supp. 2d. 257, 270 (D. Del. 2012);
[123] 20 CFR 404. 103.03(C).

further delay would contravene justice, a court may reverse and award benefits, rather than remand for a new hearing.[124]  Because it is unclear as to the basis or reasoning for the ALJ's findings regarding the weight attributed to Dr. Chidekel's opinion, remand is appropriate.

## VI.    ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, I recommend that:

(1) Plaintiff's motion for summary judgment (D.I. 17) be GRANTED in part.

(2) Defendant's motion for summary judgment (D.I. 21) be DENIED.

(3) The case be REMANDED for further proceedings.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), FED. R. CIV. P. 72(b)(1), and D. DEL. LR 71.2.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.

The parties are directed to the Court's standing Order in Non-Pro Se matters for objections filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date:  October 21, 2013                    /s/ Mary Pat Thynge
                                           UNITED STATES MAGISTRATE JUDGE

---

[124] *Morales*, 225 F.3d at 320.